**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 19-cr-805-2 |
| | ) | |
| JAMES T. WEISS | ) | Hon. Steven C. Seeger |
| _____ | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant James Weiss allegedly bribed then-state representative Luis Arroyo, and a state senator, to promote favorable legislation for the sweepstakes gaming industry in Illinois. A grand jury later returned an eight-count indictment against Weiss and Arroyo, charging them with a wire and honest services fraud scheme. The indictment also charged Weiss with offering bribes intended to influence state legislators, and with making false statements to law enforcement.

Weiss, in turn, moved to dismiss the indictment based on the Constitution's Speech or Debate Clause. That argument doesn't get off the ground. The Speech or Debate Clause protects federal legislators, not state legislators. There is no basis to extend that protection under federal common law, either. In fact, decades ago, the Supreme Court squarely held that federal common law does not recognize an immunity or privilege for state legislators in federal criminal cases. And in any event, Weiss cannot invoke any privilege of a legislator because he isn't a legislator.

For the reasons stated below, the motion to dismiss the indictment is denied.

**Background**

This case is about alleged corruption in the Illinois State Legislature. Defendant James Weiss is a private citizen who worked in the sweepstakes gaming industry as the manager of

Collage LLC. *See* Superseding Indictment, at ¶ 1(c) (Dckt. No. 41). His co-Defendant, Luis Arroyo, is a former Illinois State Representative who represented the Third District from 2006 until his resignation in 2019. *Id.* at ¶ 1(b). Arroyo also managed a personal lobbying firm, called Spartacus 3, LLC. *Id.* at ¶ 1(e).

Together, Weiss and Arroyo allegedly engaged in a bribery scheme to advance sweepstakes gaming legislation in the State of Illinois. *Id.* at ¶¶ 1(b), 3. Beginning in 2018, Weiss paid Arroyo a total of $32,500 over the course of more than a year in exchange for Arroyo's legislative influence. *Id.* at ¶ 2. Weiss made the illicit payments to Spartacus through checks issued by Collage. *Id.* at ¶ 4. Arroyo, in turn, agreed to sponsor, vote for, and otherwise assist in the enactment of sweepstakes gaming legislation. *Id.* at ¶ 3.

The alleged corruption didn't stop with Arroyo in the Illinois House of Representatives. Weiss and Arroyo attempted to infect the Illinois State Senate with their bribery scheme, too. Together, Defendants offered bribes to a state senator – referred to in the superseding indictment as "State Senator A" – in exchange for the senator's sponsorship of, vote for, and promotion of sweepstakes legislation. *Id.* at ¶ 7. Unbeknownst to Defendants, State Senator A was cooperating with law enforcement.

Arroyo and Weiss asked State Senator A to promote the legislation beginning in August 2019. *Id.* at ¶ 9. Arroyo then met separately with the senator and offered to have Weiss pay the senator bribes in exchange for the senator's support. *Id.* at ¶ 10.

In the months that followed, Arroyo and Weiss each sent bribe payments of $2,500 to State Senator A. *Id.* at ¶¶ 11, 14. Along with the payments, Defendants provided the senator with copies and explanations of the proposed legislation. *Id.* at ¶¶ 11–12.

2

Defendants allegedly disguised the illicit bribes as payments to a fictitious third party under a sham consulting contract. *Id.* at ¶¶ 11, 13. Under this fake contract, Collage would issue a check to the third party (whom State Senator A had invented) so that State Senator A could collect the check without detection.

Meanwhile, federal agents investigated Weiss and Arroyo and in October 2019 approached Weiss for an interview. During the interview, Weiss allegedly made a series of false statements about his dealings with the fictitious third party, describing the business as a legitimate consulting relationship. *Id.* at ¶ 16. In fact, the payments were to a person who did not exist.

On October 1, 2020, a grand jury returned an eight-count superseding indictment charging both Weiss and Arroyo with wire fraud and bribery schemes. *See* Superseding Indictment (Dckt. No. 41). Arroyo ultimately pled guilty to one count of wire fraud and received a sentence of 57 months. He later appealed.

Weiss faces seven counts. The superseding indictment charges him with wire fraud, in violation of 18 U.S.C. §§ 1343, 1346 (Counts I–IV), federal program bribery, in violation of 18 U.S.C. § 666(a)(2) (Counts VI–VII), and making a materially false statement to the FBI, in violation of 18 U.S.C. § 1001(a)(2) (Count VIII). *Id.*

In the grand jury proceedings, the government presented evidence of actions that Arroyo took in his capacity as a state representative. That evidence included testimony from current and former state legislators about Arroyo's efforts to pass sweepstakes legislation, as well as transcripts from House Executive Committee hearings in which Arroyo made statements in favor of the legislation. *See, e.g.*, Exhibit 4, at 14–18 (Dckt. No. 221-4); Exhibit 6 (Dckt. No. 218-6); Exhibit 7 (Dckt. No. 218-7).

3

Weiss moved to dismiss the indictment, challenging its sufficiency under Federal Rule of Criminal Procedure 12(b) and the Constitution's Speech or Debate Clause. *See* Mtn. to Dismiss Indictment (Dckt. No. 219).

During the final pretrial conference on May 17, 2023, the Court orally denied the motion and gave a verbal explanation for its decision. The Court stated that it would issue an opinion in writing at a later date. *See* 5/17/23 Order (Dckt. No. 237).

Before the Court issued its written opinion (meaning the one you're reading right now), Weiss filed a notice of appeal. *See* Notice of Appeal (Dckt. No. 243). The Court now provides the following Order. *See Wis. Mut. Ins. Co. v. United States*, 441 F.3d 502, 504–05 (7th Cir. 2006) (holding that a district court acts within its jurisdiction by "enter[ing] a proper final decision and thus permit[ting] a pending appeal to go forward").[1]

## Legal Standard

Federal Rule of Criminal Procedure 12(b)(3) allows a defendant to move to dismiss an indictment for an error in the grand jury proceeding. *See* Fed. R. Crim. P. 12(b)(3)(A)(v). The Supreme Court has long held that "[a]n indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 362 (1956). "As a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of N.S. v. United States*, 487 U.S. 250, 254 (1988).

A motion to dismiss an indictment is not "a means of testing the strength or weakness of the government's case." *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). Thus, an

---

[1] Weiss suggests that the filing of the notice of appeal prevents this Court from issuing its opinion. Not so. This Court can say in writing what it already said out loud in open court.

indictment may be dismissed before trial based on a defense that raises a purely legal question, but it may not be dismissed based on a defense relating to the strength of the government's evidence. *United States v. Labs of Va., Inc.*, 272 F. Supp. 2d 764, 768 (N.D. Ill. 2003); *United States v. Lee*, 2017 WL 56630, at *1 (N.D. Ill. 2017); *Moore*, 563 F.3d at 586 (noting that the inquiry at the motion to dismiss phase is to determine "if it's possible to view the conduct alleged" as constituting the crime alleged); *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) (noting the ordinary rule while affirming a district court that dismissed an indictment as to which, under the undisputed facts, "there was no case to prove").

## Analysis

Weiss moves to dismiss the superseding indictment, arguing that the government improperly presented the grand jury with evidence of protected legislative activity in violation of the Speech or Debate Clause of the Constitution. *See* Mtn. to Dismiss Indictment, at 1 (Dckt. No. 219).

The Speech or Debate Clause provides special protection to members of Congress against harassment, mistreatment, and interference by the other branches. The Clause appears at the tail end of a longer provision that protects Senators and Representatives in their pocketbooks, and in their respective legislative chambers. Specifically:

> The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

*See* U.S. Const. art. I, § 6, cl. 1.

"Two interrelated rationales underlie the Speech or Debate Clause: first, the need to avoid intrusion by the Executive or Judiciary into the affairs of a coequal branch, and second, the desire to protect legislative independence." *United States v. Gillock*, 445 U.S. 360, 369 (1980). The Clause is designed to respect "the independence and integrity of the legislature," and provides protection against possible "prosecution by an unfriendly executive and conviction by a hostile judiciary." *United States v. Johnson*, 383 U.S. 169, 178–79 (1966); *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975) ("The purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently.").

The genesis of the Speech or Debate Clause stemmed from a history of the British crown interfering with members of Parliament. "England's experience with monarchs exerting pressure on members of Parliament by using judicial process to make them more responsive to their wishes led the authors of our Constitution to write an explicit legislative privilege into our organic law." *See Gillock*, 445 U.S. at 368–69. The Speech or Debate Clause is yet another crossbeam in the structure of the Constitution upholding the separation of powers.

To that end, the Supreme Court has interpreted the Clause "broadly" to establish an immunity that protects members of Congress acting within the "sphere of legitimate legislative activity." *Gravel v. United States*, 408 U.S. 606, 624 (1972). When this legislative immunity applies, members of Congress receive protection "not only from the consequences of litigation's results but also from the burden of defending themselves." *Sup. Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 723 (1980) (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)). These protections extend, to a certain extent, to legislative staff members, officers, or other employees of a legislative body. *Gravel*, 408 U.S. at 606.

6

The Supreme Court has found the Clause to protect federal legislators in several respects. First, it shields members of Congress from criminal or civil liability for their legislative acts. *See Gravel*, 408 U.S. at 615. Second, it provides an evidentiary privilege that prevents the introduction of evidence of a legislative act in a criminal prosecution against a member of Congress. *See United States v. Helstoski*, 442 U.S. 477, 487 (1979). Third, it supplies a testimonial privilege prohibiting compulsory testimony or document production relating to legislative acts, including questioning in a grand jury proceeding. *See Gravel*, 408 U.S. at 622. In short, "the Speech or Debate Clause prohibits inquiry . . . into those things generally said or done in the House or the Senate in the performance of official duties and into the motivation for those acts." *United States v. Brewster,* 408 U.S. 501, 512 (1972).

Weiss argues that the grand jury proceedings in this case violated the Speech or Debate Clause because the Government introduced evidence to the grand jury of legislative activity by Arroyo and others promoting sweepstakes legislation. *See* Mtn. to Dismiss Indictment (Dckt. No. 219). As Weiss sees it, the Government's use of this evidence ran afoul of the Clause's absolute prohibition against "using [] protected legislative activity as evidence in any trial or before any Grand Jury." *Id.* at 1.

The motion fails for several independent reasons.[2] The Speech or Debate Clause protects federal legislators, not state legislators. There is no room to create a privilege under federal common law, either. In fact, decades ago, the Supreme Court rejected a request to create a comparable protection for state legislators under federal common law in federal criminal cases. And in any event, Weiss cannot assert a privilege of a legislator because he is not a legislator.

---

[2]  The government argues that the Court should dismiss the motion as untimely under Federal Rule of Criminal Procedure 12(b)(3).  *See* Gov't Resp., at 3–4 (Dckt. No. 225).  Because the Court concludes that the motion fails on the merits, it does not address the timeliness of Defendant's motion.  That said, Weiss did waive any argument under federal common law by raising it for the first time in his reply brief.

## I.     The Speech or Debate Clause

For starters, the Speech or Debate Clause does not apply to state legislators. The Supreme Court has confirmed that the constitutional text means what it says. "The Federal Speech or Debate Clause . . . is a limitation on the Federal Executive, but by its terms is confined to Federal Legislators." *United States v. Gillock*, 445 U.S. 360, 374 (1980).

The text of the Clause reveals that it applies to federal legislators, not state legislators. The first four words cement the point in unmistakable terms. Article I, Section 6, Clause 1 opens by referring to "[t]he Senators and Representatives." *See* U.S. Const. art. I, § 6, cl. 1.

When the provision refers to speech or debate "in either House," it is referring to either house of Congress. *Id.*; *see also* U.S. Const. art. I, § 1 (providing that the Congress of the United States "shall consist of a Senate and House of Representatives"); U.S. Const. art. I, § 2 (creating the House of Representatives); U.S. Const. art. I, § 3 (creating the Senate). And when it says that "they shall not be questioned" in another place, "they" means "Senators and Representatives." *See* U.S. Const. art. I, § 6, cl. 1. The text protects federal legislators, without a whiff of a reference to state legislators.

The structure of the provision buttresses the text. The provision appears in Article I, the article of the Constitution that lays out the powers and privileges of Congress. "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." *See* U.S. Const. art. I, § 1. Article I is about the Congress of the United States, not state legislatures.

Courts have repeatedly held that the Clause applies only to members of Congress. *See Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 404 (1979) ("The Speech or Debate Clause of the United States Constitution is no more applicable to the members of state

legislatures . . . ."); *see also United States v. DiCarlo*, 565 F.2d 802, 805 (1st Cir. 1977) ("The 'Speech or Debate' clause does not apply, or purport to apply, to state legislators."); *In re Grand Jury Proceedings*, 563 F.2d 577, 581 (3d Cir. 1977) ("We find it significant that the constitutional phraseology is limited to members of Congress, and we conclude that the immunity is granted only to them and to certain of their aides.  It does not apply to members of a state legislature.") (citations omitted); *United States v. Craig*, 528 F.2d 773, 782 (7th Cir. 1976) (Tone, J., concurring) ("[T]he speech or debate clause of the Federal Constitution . . . applies only to Congress.") (citations omitted); *Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections*, 2011 WL 4837508, at *5 (N.D. Ill. 2011) (Tinder, J.) ("The Speech or Debate Clause, by its terms, does not apply at all to state and local legislators."); *United States v. Boender*, 2010 WL 680952, at *2 (N.D. Ill. 2010) ("[T]he clause applies only to members of the United States Senate and House of Representatives and therefore does not apply to state or municipal legislators.") (citing *Lake Country Ests.*, 440 U.S. at 404); *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 164 F.R.D. 257, 266 (N.D. Fla. 1995). (same).

To be sure, state legislators do enjoy some degree of legislative privileges and immunities analogous to the constitutional protections for federal legislators.  A good example is immunity from civil liability for taking legislative acts.  *See Tenney v. Brandhove*, 341 U.S. 367, 376 (1951).  But those protections do not arise under the Constitution.

They have a different source altogether:  federal common law.  *Id.*; *see also United States v. Gillock*, 445 U.S. 360, 372 n.10 (1980) ("Despite the frequent invocation of the federal Speech or Debate Clause in *Tenney*, the Court has made clear that the holding was grounded on its interpretation of federal common law, not on the Speech or Debate Clause."); *Sup. Ct. of Va.*,

446 U.S. at 732 ("We have also recognized that state legislators enjoy common-law immunity from liability for their legislative acts . . . ."); *Thillens, Inc. v. Cmty. Currency Exch. Ass'n of Illinois, Inc.*, 729 F.2d 1128, 1129–30 (7th Cir. 1984) ("The protection afforded state legislators from liability under federal law for actions within the sphere of legitimate legislative activity arises out of the common law doctrine of official immunity."); *United States v. Craig*, 528 F.2d 773, 781 (1976) (Tone, J., concurring), *adopted en banc,* 537 F.2d 957, 958 (1976) (per curiam) ("[T]he protection afforded state legislators under the federal law for acts done in their legislative roles is based on the common law doctrine of official immunity."), *cert. denied sub nom. Markert v. United States*, 429 U.S. 999 (1976).

The Speech or Debate Clause offers no protection for Weiss.[3]  The Speech or Debate Clause applies to federal legislators, not a state legislators.  Arroyo was a state legislator, not a federal legislator, so the Speech or Debate Clause does not apply.

This case does not involve any member of Congress, so the Speech or Debate Clause does not come into play.  *See Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 95 (S.D.N.Y. 2003) ("[B]ecause the defendants are not federal lawmakers, the Speech or Debate Clause of the federal Constitution is not directly applicable.") (citing *Gillock*, 445 U.S. at 370).

---

[3]  In his motion, Weiss marshals a litany of cases purporting to show the breadth of state legislative immunity.  But each involved federal, not state, legislators.  *See United States v. Helstoski*, 442 U.S. 477, 479 (1979) (involving a former member of the United States House of Representatives); *Swindall*, 971 F.2d at 1534 (same); *United States v. Rostenkowski*, 59 F.3d 1291, 1294 (D.C. Cir. 1995) (same); *Rangel v. Boehner*, 20 F. Supp. 3d 148, 155 (D.D.C. 2013) (same); *In re Grand Jury Investigation*, 587 F.2d 589, 591 (3d Cir. 1978) (same); *United States v. Johnson*, 337 F.2d 180, 184 (4th Cir. 1964) (same); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 526 (9th Cir. 1983) (same); *United States v. Menendez*, 831 F.3d 155, 159 (3d Cir. 2016) (involving a United States Senator); *Bastien v. Off. of Senator Ben Nighthorse Campbell*, 390 F.3d 1301, 1303 (10th Cir. 2004) (same).  Their holdings derived from the Speech or Debate Clause and have no bearing on the applicability or scope of the state legislative immunity at issue in this case.  The doctrines are different in source, and different in scope.  *See In Re Witness Before Special Grand Jury 2000–02*, 288 F.3d 289, 295 (7th Cir. 2002); *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 333 (E.D. Va. 2015) ("State legislative immunity differs, however, from federal legislative immunity in its source of authority, purposes, and degree of protection.").

At some level, that conclusion is enough to dispose of the motion. In the motion itself, Weiss made an argument under the Speech or Debate Clause. *See* Def.'s Mtn. to Dismiss Indictment (Dckt. No. 219). He did not invoke federal common law until his reply brief. *See* Def.'s Reply, at 6 (Dckt. No. 233). Any argument under federal common law is waived. Ordinarily, arguments that appear for the first time in replies are waived, and there is no reason why this case should be any different. *See Int'l Ass'n of Fire Fighters, Loc. 365 v. City of East Chicago*, 56 F.4th 437, 452 (7th Cir. 2022); *Williams v. Bd. of Educ.*, 982 F.3d 495, 507 n.30 (7th Cir. 2020).

Even so, in the interest of completeness, the Court will address the merits of his argument under federal common law, even though it made a belated appearance in his reply.

## II.     Federal Common Law

The text and structure of the Constitution confirm that state legislators receive no protection under the Speech or Debate Clause. As a fallback, Weiss asks this Court to create an immunity or privilege under federal common law.

That argument is a non-starter. Weiss asks the Court to apply an immunity or privilege that the Supreme Court has held does not exist. That ship has sailed, and there is no discernible reason to call it back to port.

Weiss argues that federalism compels the creation of a common law privilege for state legislators. *See* Def.'s Reply, at 5 (Dckt. No. 233) ("The application of the Speech and Debate Clause in federal criminal cases is an established part of the federal common law and its application to State Legislators is compelled by principles of federalism."). In his view, a privilege is necessary because state legislative functions "could be substantially hindered by exposing members to litigation arising out of the performance of their legislative duties." *Id.*

11

"[I]n view of the purposes of the speech or debate privilege, its common law history, and the important role of the states in governing the country, there must be a federal common law speech or debate prohibition applicable in federal criminal prosecutions."  *Id.* at 6.

It is true that state legislators possess a common law immunity from *civil* suits.  *See Tenney v. Brandhove*, 341 U.S. 367 (1951).  But the Supreme Court has squarely held that any such immunity or privilege does not apply to federal *criminal* prosecutions.  *See United States v. Gillock*, 445 U.S. 360, 373 (1980).

In *Gillock*, the Supreme Court expressly declined to "recognize a comparable evidentiary privilege for state legislators in federal prosecutions."  *Id.* at 368.  The Supreme Court held that there is no speech or debate privilege barring the introduction of evidence of state legislative acts in a federal criminal prosecution against a state legislator.  *Id.* at 373.

Separation of powers principles offered "no support to the grant of a privilege to state legislators in federal criminal prosecutions."  *Id.* at 370.  "[I]n those areas where the Constitution grants the Federal Government the power to act, the Supremacy Clause dictates that federal enactments will prevail over competing state exercises of power.  Thus, under our federal structure, we do not have the struggles for power between the federal and state systems such as inspired the need for the Speech or Debate Clause as a restraint on the Federal Executive to protect federal legislators."  *Id.*

Federalism also did not provide a reason for creating a privilege under federal common law.  In fact, federalism cut the other way.  Federal law is supreme, and state interests take a backseat when Congress exercises its authority and enacts a federal criminal statute.  *Id.*

The Speech or Debate Clause is a horizontal structural protection in the Constitution.  It protects one branch (the legislature) from the other two branches, and thus promotes the

12

separation of powers. The Speech or Debate Clause does not provide a vertical structural protection against federal interference in state legislative matters. If anything, the Supreme Court has recognized that any federalism-based concerns must yield to an overriding federal interest in federal criminal matters.

The interest in comity did not support creating a privilege for state legislators, either. Once again, the Supreme Court saw no need to "require the extension of a speech or debate type privilege to state legislators in federal criminal prosecutions." *Id.* at 370. "[F]ederal interference in the state legislative process is not on the same constitutional footing with the interference of one branch of the Federal Government in the affairs of a coequal branch." *Id.* "The absence of a judicially created evidentiary privilege for state legislators is not [a] comparable intervention by the Federal Government into essential state functions." *Id.* at 371.

At bottom, the Supreme Court held that the animating principles underlying the Speech or Debate Clause did not support creating a privilege for state legislators under federal common law. The Speech or Debate Clause is about protecting federal legislators from the other federal branches. It is not about protecting state legislators from branches of the federal government.

Creating a privilege for state legislators would undermine important federal interests, too. "[W]e believe that recognition of an evidentiary privilege for state legislators for their legislative acts would impair the legitimate interest of the Federal Government in enforcing its criminal statutes with only speculative benefit to the state legislative process." *Id.* at 373.

Congress has the power to protect state legislators from federal prosecution if it wants. But Congress declined to do so. And the Supreme Court declined the invitation to fill the void. By the look of things, there was no void to fill. *Id.* at 374 ("Congress might have provided that a state legislator prosecuted under federal law should be accorded the same evidentiary privileges

as a Member of Congress. Alternatively, Congress could have imported the 'spirit' of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), into federal criminal law and directed federal courts to apply to a state legislator the same evidentiary privileges available in a prosecution of a similar charge in the courts of the state. But Congress has chosen neither of these courses.").

As the Seventh Circuit has explained it: "the [*Gillock*] Court refused to acknowledge a privilege in a criminal proceeding for statements made by a state senator, even though similar statements would have been privileged under the Speech or Debate Clause, U.S. Const. Art. I, § 6, cl. 1, if they had been made by a federal legislator." *See In Re Witness Before Special Grand Jury 2000–02*, 288 F.3d 289, 295 (7th Cir. 2002).

The Supreme Court has recognized that state legislators, like their federal counterparts, possess absolute immunity from *civil* lawsuits for their "legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951); *see also Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998) ("It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities."); *McCann v. Brady*, 909 F.3d 193, 196 (7th Cir. 2018) ("[L]egislative immunity is not something that is confined to federal legislators."); *Reeder v. Madigan*, 780 F.3d 799, 802 (7th Cir. 2015) ("Legislators at the state, regional, and municipal levels are also entitled to absolute immunity for their legislative activities."). And, like federal legislative immunity, this immunity extends beyond the legislators themselves to legislative staff members, officers, or other employees of a legislative body. *See Reeder*, 780 F.3d at 803.

But as far as absolute immunity from suit goes, the blanket of protection ends at civil cases. *Gillock* expressly declined "to recognize an evidentiary privilege similar in scope to the

Federal Speech or Debate Clause" in federal criminal cases. *Gillock*, 445 U.S. at 366. "[I]n protecting the independence of state legislators, . . . cases on official immunity have drawn the line at civil actions." *Id.* at 373. In fact, "the cases in [the Supreme] Court which have recognized an immunity from civil suit for state officials have presumed the existence of federal criminal liability as a restraining factor on the conduct of state officials." *Id.* at 372.

"The immunity extends to civil, *and not to criminal*, liability in large part because civil immunity alone is deemed sufficient to promote the unfettered debate necessary for the effective discharge of legislative duties." *Thillens, Inc. v. Cmty. Currency Exch. Ass'n of Illinois, Inc.*, 729 F.2d 1128, 1130 (7th Cir. 1984) (emphasis added).

Since *Gillock*, a number of courts have found that "state legislators do not enjoy the type of absolute protection afforded members of the Congress under the Speech or Debate Clause." *See Cano v. Davis*, 193 F. Supp. 2d 1177, 1180 (C.D. Cal. 2002); *see also Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *6 ("[A] number of courts have 'rejected the notion that the common law immunity of state legislators gives rise to a general evidentiary privilege.'") (quoting *Manzi v. DiCarlo*, 982 F. Supp. 125, 129 (E.D.N.Y. 1997)); *In re Grand Jury*, 821 F.2d 946, 957 (3d Cir. 1987) ("Neither the threat of harassment, the dangers of distraction, nor the potential disruption of confidential communications justifies a qualified privilege for the full range of legislative activities normally protected by the Speech or Debate Clause.").

The bottom line is that state legislators enjoy some degree of common law speech or debate privilege in civil cases. But they do not receive protection under federal common law in a federal criminal case.

Another court in this district applied *Gillock* in a similar case. In *United States v. Boender*, 2010 WL 680952, at *2 (N.D. Ill. 2010) (Dow, J.), Judge Dow faced the question

15

whether to recognize a legislative privilege in a criminal case in which a legislator was called as a witness. The case involved a federal bribery prosecution of a real estate developer who bribed a city alderman as a part of a scheme to have property rezoned. *See Boender*, 2010 WL 680952, at *1. Before trial, several City of Chicago aldermen were subpoenaed to testify. *Id.* The aldermen, citing state legislative privilege, moved to bar testimony as to their motivations for voting on the city zoning legislation. *Id.*

Applying *Gillock*, Judge Dow saw no basis for recognizing a state legislative privilege in that context. Acknowledging the "general desirability of not interfering with state and municipal legislative processes," the court was "unconvinced that legislators would be chilled in their deliberations by the possibility that one among their number could face trial," or "by the possibility of being called in the trial of a defendant who is not among their number." *Id.* at *6 & n.6; *see also United States v. Nixon*, 418 U.S. 683, 712 (1974) ("[W]e cannot conclude that advisers will be moved to temper the candor of their remarks by the infrequent occasions of disclosure because of the possibility that such conversations will be called for in the context of a criminal prosecution.").

This Court likewise finds that *Gillock* forecloses the privilege that Weiss seeks to create. Here, as in both *Gillock* and *Boender*, "[c]omity demands respect for state interests, but it does not demand blinking away reality at the expense of strong federal interests." *Boender*, 2010 WL 680952, at *8; *see also United States v. Wilson*, 960 F.2d 48, 50 (7th Cir. 1992) (refusing to recognize a state-law privilege in a federal criminal case and reasoning that the government's strong interest in enforcing criminal statutes "implies a strong policy favoring admissibility of relevant evidence in criminal cases").

The Supreme Court has repeatedly held that "[l]egislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *See Tenney*, 341 U.S. at 377. This case is a federal criminal prosecution for bribery of a state politician. The federal government's interest in rooting out corruption through the enforcement of its criminal statutes is unquestionably important. *See Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 496–97 (1985) ("[P]reventing corruption or the appearance of corruption are . . . legitimate and compelling government interests . . . ."). Under these circumstances, "recognition of an evidentiary privilege for state legislators for their legislative acts would impair the legitimate interest of the Federal Government in enforcing its criminal statutes with only speculative benefit to the state legislative process." *Gillock*, 445 U.S. at 373.

Weiss attempts to distinguish *Gillock* in two ways. First, he argues that *Gillock* arose in the context of a state legislator's motion to suppress. *See* Def.'s Reply, at 4–5 (Dckt. No. 233). The senator in that case sought to bar the government from using evidence of his own legislative acts against him at trial.

Here, the procedural posture is different. Weiss challenges the government's use of evidence of legislative activity during grand jury proceedings. He moves to dismiss the indictment "because of the use of State legislative acts and the questioning of State legislators in relation to legislative acts before the Grand Jury and in the court." *Id.*

That's a distinction without a difference. The Supreme Court's rationale in *Gillock* did not turn on the posture of the motion. The decision turned on the merits, not the procedural posture.

17

The Court sees no reason why *Gillock*'s holding about a motion to suppress would not apply with equal force in the context of a grand jury proceeding. And Weiss (besides pointing out the distinction) makes no argument on the point. If anything, it cuts in the other direction.

A grand jury is an accusatory body, not an adjudicatory one. Accordingly, the Supreme Court has held that, "because the grand jury is an institution separate from the courts, over whose functioning the courts do not preside," courts generally do not exercise supervisory authority over grand jury proceedings. *United States v. Williams*, 504 U.S. 36, 47 (1992).

Grand jury proceedings therefore offer fewer protections than trials. *Id.* at 49 ("No doubt in view of the grand jury proceeding's status as other than a constituent element of a 'criminal prosecutio[n],' we have said that certain constitutional protections afforded defendants in criminal proceedings have no application before that body.") (citation omitted). "[M]any constitutional protections afforded defendants in criminal proceedings have no application to grand jury proceedings because the grand jury is an accusatory, not adjudicatory, body." *United States v. Puglia*, 8 F.3d 478, 482 (7th Cir. 1993).

For example, a grand jury may consider a broad range of evidence, even if that evidence would be inadmissible at trial. *Id.* at 482. Additionally, the Double Jeopardy Clause of the Fifth Amendment does not bar a grand jury from returning an indictment when a prior grand jury has refused to do so. *Williams*, 504 U.S. at 49.

Given the grand jury's role and associated procedural protections, it would make little sense to recognize a privilege in the context of a grand jury proceeding that is more robust than what is available during trial. To hold otherwise would not only contradict *Gillock*, but also swim against the current of caselaw holding that grand jury proceedings are subject to fewer procedural and constitutional protections.

18

Second, Weiss points out that in *Gillock*, a state senator himself was the target of the criminal wrongdoing. The legislator in *Gillock* sought to suppress evidence of his own legislative acts. The Supreme Court addressed "whether the federal courts in a federal criminal prosecution should recognize a legislative privilege barring the introduction of evidence of the legislative acts of a state legislator charged with taking bribes or otherwise obtaining money unlawfully through exploitation of his official position." *Gillock*, 445 U.S. at 361–62.

Here, in contrast, Weiss is a private citizen, and the grand jury proceedings included "evidence of the legislative acts of state[] legislators and testimony about such acts from state legislatures who are not being prosecuted in a federal criminal action." *See* Def.'s Reply, at 4 (Dckt. No. 233). That is, Weiss is not a state legislator, and the legislative acts at issue are not his own.[4]

That's not much of a reason to recognize a privilege, either. If anything, it cuts the other way. If a state legislator does not receive protection under federal common law, it is hard to see why someone who is not a state legislator should receive that protection. A legislator has a better argument for protection as a legislator than a non-legislator.

The Supreme Court declined to recognize a privilege in *Gillock* "not because it was a criminal case and Gillock was its target, but because the historical concerns that led to the Speech or Debate Clause did not apply with equal force to states in light of our federal system." *United States v. Boender*, 2010 WL 680952, at *5 (N.D. Ill. 2010) (Dow, J.). *Gillock* was clear: "although principles of comity command careful consideration, our cases disclose that where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity

---

[4] As the Court will discuss in Part III, *infra*, the fact that the legislative acts in question are not attributable to Weiss is separately fatal to his motion.

yields." *Gillock*, 445 U.S. at 373. It is the criminal context, rather than the criminal defendant, that animates *Gillock*'s holding.

In sum, Weiss faces an uphill battle when asking for the creation of a privilege under federal common law, and the battle is doomed. Weiss seeks some type of privilege or immunity about the government's use of evidence of state legislative activity in front of the grand jury. The Supreme Court has blocked the path to any such privilege in federal criminal cases. The Supreme Court has already closed the door, and it is locked, deadbolted, and cemented shut.

Weiss asks this Court to brush *Gillock* aside. He asserts that "*Gillock*, like *Roe v. Wade*, was clearly improperly decided." *See* Def.'s Reply, at 5 (Dckt. No. 233). Suffice it to say that it is this Court's role to apply Supreme Court precedent, not reconsider it. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is [the Supreme Court's] prerogative alone to overrule one of its precedents.").

Sometimes litigants make an argument for a good faith change or extension of precedent. After all, that's how the law often changes. But here, Weiss has not put the ball in play. Weiss has not come up with much of a reason to call *Gillock* into question. And this Court can see no reason why anyone should revisit *Gillock* (and this Court would have no power to do so anyway).

Weiss does not point to any stream of case law from the Supreme Court that has eroded the foundations of *Gillock*. Decades have passed since the Supreme Court decided *Gillock*, and Weiss has not identified any judicial erosion of the bedrock precedent in this area. Making blanket allusions to federalism won't cut it.

If anything, *Gillock* has stood the test of time. There isn't exactly a groundswell of support in the judiciary, the legal community, or the public at large for giving greater protections

20

to state legislators who are accused of federal criminal wrongdoing.  Not a lot of people call for more immunities for politicians charged with public corruption.

In sum, *Gillock* controls.  Weiss may not assert an immunity or privilege under federal common law that the Supreme Court has said does not exist.

## III.     Weiss Cannot Assert the Privilege

Even if the Speech or Debate Clause applied to state legislators, or a state legislative privilege existed in federal criminal cases, there is another, independent reason to deny the motion.  Weiss – a private citizen – cannot invoke the legislative privilege.  Only legislators and their aides can.

"The legislative privilege 'is a personal one.'"  *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 671 (D. Ariz. 2016) (quoting *Marylanders for Fair Representation, Inc. v. Shaefer*, 144 F.R.D. 292, 298 (D. Md. 1992)) (citing *Gravel*, 408 U.S. at 622 n.13); *see also United States v. Craig*, 528 F.2d 773, 780 (7th Cir. 1976) ("The Speech or Debate Clause is intended to provide a *personal* safeguard for the individual legislator . . . .") (emphasis added).  That is, the privilege belongs to the legislator who performs the legislative acts.

Thus, only the privilege-holder, meaning the legislator (or their aides), may assert the privilege.  *See Shaefer*, 144 F.R.D. at 298; *see also* 6 James W. Moore *et al.*, Moore's Federal Practice § 26.52[11] (3d ed. 2022) ("The legislative privilege is a personal one and may be asserted or waived by each individual legislator."); 26A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 5675 (3d ed. Apr. 2022 update) ("The speech or debate privilege belongs to the legislator whose legislative act is involved in the evidence . . . .").

Weiss is a private citizen, not a legislator or a legislator's aide.  He does not identify any evidence of legislative activity that the government presented to the grand jury for which he was

responsible.  In fact, Weiss concedes that the legislative acts at issue are not his own.  *See* Def.'s

Reply, at 10 (Dckt. No. 233) ("If the government is allowed to violate the clause by questioning

legislative activities and then using the evidence against non-legislators like Defendant, then the

express clause becomes meaningless."); *see also id.* at 4 ("[T]his is a federal criminal

prosecution against a private citizen, not a state legislature, concerning evidence of the

legislative acts of states legislators and testimony about such acts from state legislatures who are

not being prosecuted in a federal criminal action.").  Simply put, Weiss has no privilege to assert.

To be sure, the government presented evidence of state legislative acts (including by

Arroyo) to the grand jury.  But it was the prerogative of those legislators, and those legislators

alone, to assert their privilege.  None have done so.

Weiss may not waive or assert the privilege vicariously on their behalf.  *See Perez v.

Perry*, 2014 WL 106927, at *1 (W.D. Tex. 2014) (finding that the governor, secretary of state,

and the State of Texas did not have standing to assert the legislative privilege on behalf of a

legislator or staff member) (citing *A Helping Hand, LLC v. Baltimore County*, 295 F. Supp. 2d

585, 590 (D. Md. 2003)); *see also Gilby v. Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020)

("A legislator cannot assert the privilege on behalf of another legislator . . . ."); *Favors v. Cuomo*,

285 F.R.D. 187, 211 (E.D.N.Y. 2012) (same); Wright & Miller, *supra*, § 5675 ("[P]olicy would

suggest that third persons ought not be allowed to assert [the legislative privilege] when neither

the legislator nor an aide is present. . . .  Since the purpose of the privilege is to preserve the

independence of the legislators and prevent burdening them, it is rare that the use of evidence of

a legislative act against some third person that does not require the testimony of either the

legislator or his aides would offend that policy.").

Weiss may not assert a legislative privilege for himself, because he has no privilege as a non-legislator. Weiss cannot assert a legislative privilege on behalf of Arroyo, or on behalf any other state legislator, either. He is not the privilege holder, and he cannot assert a privilege for other people.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss the indictment is denied.

Date:  June 1, 2023 _____

Steven C. Seeger
United States District Judge